NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTHERN STAR MANAGEMENT, INC., | |
| Plaintiff, | Civil Action No. 12-cv-3839 (JAP) |
| v. | **OPINION** |
| THE INSURANCE PROFESSIONALS, INC. | |
| Defendant. | |

Presently before the Court is Defendant, the Insurance Professionals, Inc.'s ("Defendant") motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) [docket #53].  Plaintiff, Northern Star Management, Inc. ("Plaintiff") opposes this motion and also moves to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a) [docket #58 and 59].  Defendant opposes Plaintiff's motion to amend its complaint [docket #62].  This Court considered the papers filed by the parties and rules on the written submissions without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons that follow, this Court grants Plaintiff's motion to amend its complaint and denies Defendant's motion for judgment on the pleadings as moot.

**I.   BACKGROUND**

Plaintiff is a New Jersey based insurance program and underwriting manager, and brings this action for tortious interference against Defendant, an Arizona based insurance program and underwriting manager. Compl. ¶ 1.  Plaintiff alleges that it had a contract with SUA Insurance

1

Company ("SUA")[1], whereby Plaintiff had the exclusive right to offer, bind and issue certain policies, such as collateral recovery operations, towing and hauling operations, and other automotive transportation, in specified territories on behalf of SUA.  Compl. ¶¶ 1, 15-16.  SUA was contractually precluded from permitting any other agent to write insurance for the lines of insurance set forth in its agreement with Plaintiff on its behalf, or on behalf of any other insurance affiliate.  Compl. ¶ 17.

On May 18, 2004, SUA entered into a Partner Agent Program Agreement with AEON Insurance Group, Inc. ("AEON") whereby AEON was SUA's exclusive "Partner Agent" for the "Program" for five (5) years within the specified territory, and was later extended to ten (10) years.  Compl. ¶¶ 29-30.  In December 2009, Plaintiff accepted an assignment of AEON's rights and obligations under AEON's agreement with SUA.  Compl. ¶¶ 33-34.  In conjunction with this assignment, Plaintiff also assumed and ultimately paid SUA $605,594.61, on behalf of AEON, pursuant to a promissory note.  Compl. ¶ 35.  Then, on March 18, 2010, Plaintiff finalized its agreement with AEON to assume AEON's rights and obligations by executing a "Partner Agent Assignment, Assumption and Consent Agreement," to which AEON, Plaintiff, and SUA were a party.  Compl. ¶ 36.  Pursuant to this agreement, Plaintiff acquired all of AEON's rights and obligations with respect to AEON's contract with SUA, thereby expanding Plaintiff's exclusive lines of insurance and territories with SUA.

According to Plaintiff, Defendant, the Insurance Professionals, Inc., through improper motive and means, targeted Plaintiff and placed insurance for SUA policyholders under

---

[1] Non-party Tower Group, Inc. ("Tower") provides insurance products through various insurance companies and subsidiaries.  Compl. ¶¶ 6-7.  One such subsidiary that Tower offers its insurance products is non-party SUA, which Tower acquired in November, 2009.  Compl. ¶ 8.  Shortly after Tower acquired SUA, SUA changed its name to CastlePoint National Insurance Company ("CastlePoint").  Compl. ¶ 9.  Because the contract at issue was created between Plaintiff and SUA, this Court will refer to CastlePoint as SUA throughout this Opinion.

2

Plaintiff's lines of insurance and in Plaintiff's territories. Compl. ¶ 22. Plaintiff alleges that Defendant had actual knowledge that Plaintiff was the exclusive agent of SUA with respect to business encompassed by the Program, and that SUA was contractually prohibited from placing insurance encompassed by the Program through any entity other than Plaintiff because of Plaintiff's right to exclusivity under its contract with SUA. Compl. ¶ 42. Plaintiff claims that Defendant used improper means to acquire confidential information from SUA and began placing insurance for business covered by the Program during the effective term of the Plaintiff's contractual relationship with SUA. Compl. ¶ 44 and 47. Plaintiff brings a cause of action for tortious interference with contract and tortious interference with economic advantage claiming that, by allegedly writing insurance for business encompassed by the Program, Defendant intentionally caused SUA to breach its contract with Plaintiff. Compl. ¶¶ 53, 64, and 83.

## II.   DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 15(a) requires that leave to amend the pleadings be granted freely "when justice so requires." *Long v. Wilson,* 393 F.3d 390, 400 (3d Cir.2004). Therefore, motions to amend should be liberally granted, absent substantial prejudice, unless "denial can be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiencies by amendments previously allowed or futility of amendment." *Lundy v. Adamar of New Jersey, Inc.,* 34 F.3d 1173, 1196 (3d Cir.1994) (internal citation omitted).

In deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson,* 886 F.2d 644, 652 (3d

Cir.1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n,* 573 F.2d 820, 823 (3d Cir.1978)).  To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction.  *See Long,* 393 F.3d at 400.  Delay alone, however, does not justify denying a motion to amend.  *See Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir.2001).  Rather, it is only where delay becomes "'undue,' placing an unwarranted burden on the court, or ... 'prejudicial,' placing an unfair burden on the opposing party" that denial of a motion to amend is appropriate.  *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir.1984).  In examining whether the movant's delay is undue, the Court looks at the moving party's reasons for not amending sooner.  *Lyon v. Goldstein,* Civil Action No. 04-3458(MLC), 2006 WL 2352595, at *4 (D.N.J. Aug.15, 2006).  The same holds true in the Court's examination of bad faith. *Id.*

      Further, a proposed amendment is appropriately denied where it is futile.  An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.,* 133 F.R.D. 463, 468 (D.N.J.1990) (internal quotation marks and citations omitted).  In determining whether an amendment is "insufficient on its face," the Court employs the Rule 12(b)(6) motion to dismiss standard.  *See Alvin,* 227 F.3d at 121.  Under Rule 12(b)(6), a motion to dismiss will be granted if the plaintiff fails to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  When determining whether a claim should be dismissed under Rule 12(b)(6), the Court accepts as true all of the

allegations contained in the complaint and draws reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus,* 551 U.S. 89, 93-94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

### B. Analysis

"In New Jersey the elements of a claim for tortious interference are: (1) plaintiff had a continuing or prospective economic relationship or reasonable expectation of economic advantage; (2) the defendant knew of such relationship of expectancy; (3) the interference and harm inflicted were done intentionally and with "malice;" (4) if not for the interference, it was reasonably probable that plaintiff would have realized its economic advantage; and (5) the plaintiff was injured as a result of defendant's conduct." *Farris v. Cnty. of Camden*, 61 F. Supp. 2d 307, 352 (D.N.J. 1999). "'Malice" here means only that the action was intentional and unjustified.'" *Vibra-Tech Engineers, Inc. v. Kavalek*, 849 F. Supp. 2d 462, 493 (D.N.J. 2012).

Applying the relevant legal standard to the facts and circumstances of this case, the Court finds that Plaintiff should be granted leave to amend, as Plaintiff's Amended Complaint meets the federal pleading requirements set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

### i. *Fraudulent, Dishonest, or Illegal Conduct*

Defendant first argues that Plaintiff's Amended Complaint is futile and fails to state a claim because it neither alleges fraudulent, dishonest, or illegal conduct on the part of Defendant, nor any conduct that would otherwise fall into any of those categories. *See Memorandum of the Insurance Professionals, Inc., (a) as Reply in Support of its Rule 12(c) Motion for Judgment on the Pleadings and (b) as Opposition to Plaintiff's Cross Motion for Leave to File an Amended Complaint* [docket #62]. Applying the appropriate Rule 12(b)(6) standard, however, this Court finds that Defendant's argument fails, as the face of Plaintiff's Amended Complaint contains statements which allege, and would fall into the category of, fraudulent, dishonest, and/or illegal

5

conduct. Specifically, Plaintiff's Complaint alleges that Defendant acted "intentionally" and "wantonly" with "malice," and "tortiously" or "wrongfully" interfered by using "improper means" with an "improper motive." Compl. ¶¶ 88 and 90. Amend. Compl. ¶¶ 77, 91, and 95. As such, the Court does not find that Plaintiff's Amended Complaint would be "legally insufficient on its face." *See Harrison Beverage Co.*, 133 F.R.D. at 468.

### ii. Second Attempt to Amend

Defendant next argues that Plaintiff's amended complaint is futile and fails to state a claim because Plaintiff is attempting to gain a "third bite at the apple" by amending its Complaint twice. *See Memorandum of the Insurance Professionals, Inc., (a) as Reply in Support of its Rule 12(c) Motion for Judgment on the Pleadings and (b) as Opposition to Plaintiff's Cross Motion for Leave to File an Amended Complaint* [docket #62]. Defendant asserts a bare conclusion that Plaintiff's alleged attempt to gain a "third bite at the apple" results in the Amended Complaint being futile and failing to state a claim. Defendant does not cite any law, and more importantly, does not cite to any facts which would support this argument. In fact, there are no facts to support this argument as this is Plaintiff's first attempt to amend its Complaint.[2] As such, Defendant has failed to show that prejudice would result from this Court freely granting leave to amend. *See Long,* 393 F.3d at 400.

### iii. Discovery Responses

Defendant next argues that because Plaintiff's discovery responses do not contain documents showing "specific acts" of Defendant's wrongful conduct, Plaintiff has no substance to plead and therefore, its Amended Complaint is futile as it fails to state a claim. In making this argument, Defendant conveniently ignores the premise of the discovery process. Surely,

---

[2] While there are two entries on the docket relating to an amendment of the pleadings [docket #18 and #59], the first of these two entries [docket #18] was an amendment by *Defendant* to bring a Third-Party Impleader Action, and not an amendment by Plaintiff.

Defendant cannot expect this Court to require every Plaintiff to be in possession of every document crucial to its case. Plaintiff's moving papers demonstrate that it is in the process of reviewing approximately 100,000 pages of documents produced by non-parties and there is nothing that requires Plaintiff to plead the specific contents of any statements, or detail the actions by Defendant, at this stage of the litigation. *See Minuto v. Genesis Advisory Servs., Inc.*, 2012 WL 1085807 (D.N.J. Mar. 29, 2012).

Further, Defendant does not set forth any facts which demonstrate that it would be prejudiced by allowing Plaintiff to amend its Complaint. As set forth above, one way to demonstrate prejudice is by showing that the non-movant will be forced to incur significant additional costs in discovery as a result of the amended complaint. *See Long,* 393 F.3d at 400. Defendant's motion papers make clear that vast amounts of discovery have already been exchanged. Accordingly, Defendant will neither be prejudiced nor incur significant additional costs for discovery as a result of Plaintiff's Amended Complaint.

### iv.   *Identifying Lost Customers*

Last, Defendant argues that Plaintiff's Amended Complaint fails to state a claim because it does not identify lost customers in order to support a tortious interference claim. "Although earlier cases in this district required plaintiffs to plead with sufficient specificity the prospective economic advantage with which a defendant allegedly interfered, recent cases have not required such specificity." *Slim CD, Inc. v. Heartland Payment Sys., Inc*, 2007 WL 2459349 (D.N.J. Aug. 24, 2007). As such, the pleading party is not required "to name a specific prospective customer or contract with which another party interfered." *Id.* As stated above, this Court analyzes whether Plaintiff's Amended Complaint is futile pursuant to the Rule 12(b)(6) standard. Since

7

"a plaintiff need not identify specific lost business opportunities in its pleading for tortious interference," Plaintiff's Amended Complaint satisfies the 12(b)(6) standard because in order to state a claim upon which relief can be granted, Plaintiff need not identify specific customers. *Id.* at *4 (*citing Floorgraphics Inc., v. News America Marketing In-Store Services, Inc.*, 2006 WL 2846268 (D.N.J Sept. 29, 2006)).

### III. CONCLUSION

For the foregoing reasons, this Court grants Plaintiff's Motion to Amend [docket #59] and denies Defendant's Motion for Judgment on the Pleadings, as it is moot [docket #53]. An appropriate Order accompanies this Opinion.

Date:  September 23, 2013                                /s/ Joel A. Pisano
                                                                                                     JOEL A. PISANO
                                                                                                     United States District Judge